IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

TYLER C. FRICK,

                Plaintiff,                OPINION AND ORDER

v.

                                        25-cv-284-wmc

EMPOWER RETIREMENT, LLC and
COTY J. MAYFIELD,

                Defendants.

---

Plaintiff Tyler Frick, who represents himself, claims that a former friend, Coty Mayfield, coerced him to withdraw approximately $17,000 from his 401(k) account despite Frick being unable to consent to the withdrawals at the time due to mental illness. Mayfield then directed Frick to deposit the money into a joint bank account, which Mayfield had convinced Frick to open, after which Mayfield withdrew $10,000 from the joint account and skipped town, cutting off all contact with Frick. Understandably, Frick was left traumatized by Mayfield's betrayal and financial theft. Frick has now filed a lawsuit under the Employee Retirement Income Security Act ("ERISA") against Empower Retirement, LLC, the company responsible for managing his 401(k) account.[1] Frick contends that Empower breached its fiduciary duties by failing to recognize that the large withdrawals were suspicious and by refusing to replace the funds after Frick provided evidence of his mental incapacity. He also contends that Empower violated Title III of the

---

[1] Frick has filed several documents labeled as "complaints." For the purposes of screening, the court is considering Frick's allegations and claims from his most recent complaint, filed on April 26, 2025, and labeled "Second Amended Complaint." (Dkt. #36.) All of the other pending complaints, supplements, motions for leave to file amendments and supplements, and motions to strike amendments and supplements are considered to be superseded by the Second Amended Complaint.

Americans with Disabilities Act by failing to provide him accommodations when investigating his fraud complaint. Additionally, Frick has sued Mayfield for declaratory and injunctive relief, seeking an order declaring that Mayfield's actions amounted to financial exploitation of a disabled person and prohibiting Mayfield from approaching him, contacting him or otherwise harassing him. Frick has filed several motions for emergency injunctive relief against both defendants as well as a motion for assistance in recruiting counsel.

Because Frick seeks to proceed without prepaying the filing fee, the next step is to screen his complaint and dismiss any portion that is legally frivolous or malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law cannot be sued for money damages. 28 U.S.C. § 1915(e)(2)(B). While the court accepts Frick's allegations as true and construes them generously, *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011), holding him to a "less stringent standard" in crafting pleadings as a *pro se* plaintiff, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), his lawsuit is nonetheless subject to dismissal because plaintiff has failed to state a viable federal claim against Empower Retirement, and the court declines to exercise supplemental jurisdiction over his claims against Mayfield. However, Frick will have an opportunity to file an amended complaint that provides more allegations to support his ERISA claim against Empower Retirement. In the meantime, the court will deny plaintiff's requests for emergency injunctive relief, as well as his motion for recruitment of counsel. Until plaintiff has pleaded a viable federal claim, the court will not consider further requests for injunctive relief or counsel.

OPINION

I. **Claims against Empower Retirement**

Plaintiff asserts claims against Empower Retirement, LLC under Title III of the ADA and ERISA. The court will first consider his ADA claim under Title III, which prohibits private entities from discriminating on the basis of disability in the provision of a public accommodation. 42 U.S.C. § 12182(a). The problem with plaintiff's ADA claim is that neither an employee benefit plan, nor its administrator, qualify as a "public accommodation" because such plans are not "offered to the public." *Morgan v. Joint Admin. Bd., Ret. Plan of Pillsbury Co. & Am. Fed'n of Grain Millers, AFL-CIO-CLC*, 268 F.3d 456, 459 (7th Cir. 2001) ("No one could walk in off the street and ask to become a plan participant. The plan was a private deal, not a public offering, and so the plaintiffs' public accommodations claim fails as well."); *see also Gutierrez v. Johnson & Johnson Int'l, Inc.*, 601 F. Supp. 3d 1007, 1035 (D.N.M. 2022) ("To deem such [an employee benefit] plan a public accommodation would drain the word "public" of any meaning."). In other words, because Empower Retirement does not provide a public accommodation, plaintiff cannot proceed with a Title III ADA claim against it.

Plaintiff's allegations are also insufficient to state an ERISA claim against Empower Retirement. Plaintiff is correct that some courts have recognized potential ERISA claims against a plan administrator that pays benefits to the wrong person, whether by fraud or mistake, and then refuses to reimburse the beneficiary's account after the mistake is uncovered. *See Gatlin v. Nat. Healthcare Corp.*, 16 F. App'x 283, 288 (6th Cir. 2001); *Bullard v. TT Grp. Indus., Inc.*, No. 5:17-CV-530-DAE, 2019 WL 2098118, at *5 (W.D.

3

Tex. Mar. 5, 2019).[2]  However, in those cases, the plan's decision to pay benefits was objectively unreasonable, and qualified as either an abuse of discretion or arbitrary and capricious.  For example, in *Gatlin*, the plan violated its own company policy by permitting someone other than the plan beneficiary to change the address to which the benefits check would be sent, resulting in the beneficiary's estranged husband fraudulently endorsing and cashing the checks.  *Gatlin*, 16 Fed. App'x at *3.  In *Bullard*, the plan authorized two fraudulent withdrawals despite the withdrawal requests having multiple inconsistencies with previous legitimate requests, including the fraudulent requests providing a new bank account for deposit to a different city from that where the beneficiary lived, an incorrect phone number, grammar and typological errors, and a request for more money than was actually in the account.  *Bullard*, 2019 WL 2098118, at *6–7.  The court held that such differences should have alerted the plan administrator that the requests could be fraudulent.  *Id.* at *7.

In contrast, "[a] plan administrator that pays benefits in accord with established plan procedures when it has 'no reason to suspect that anything was amiss' is 'not obligated to inquire further.'"  *Foster v. PPG Indus., Inc.*, 693 F.3d 1226, 1236–37 (10th Cir. 2012) (quoting *Yarbary v. Martin, Pringle, Oliver, Wallace & Bauer, LLP*, 584 Fed. App'x 918, 919 (10th Cir. 2014)).  Thus, to state an ERISA claim based on payment of fraudulent withdrawals, a plaintiff must allege facts showing fault on the part of the plan administrator.  Typically, this would include allegations that the plan administrator failed to follow plan policies and procedures in approving the withdrawal request.  *See, e.g. Foster*,

---

[2] The court was unable to find any Seventh Circuit cases addressing this type of claim.

4

693 F.3d at 1235 (plan administrator did not violate ERISA where electronic withdrawals, though fraudulent, were made in accordance with plan procedures).

Here, plaintiff's allegations do not suggest that Empower Retirement violated any plan policies or procedures when it authorized the withdrawals made by plaintiff in 2023. Although plaintiff alleges that he made the withdrawals because Mayfield manipulated him into doing so, he does not allege facts showing that Empower Retirement knew or could have known about Mayfield's involvement or plaintiff's mental illness at the time. Plaintiff does argue that Empower Retirement should have suspected fraud because he had never before made a withdrawal from his account. But that would be true for anyone making a first withdrawal from their retirement account, and plaintiff has not alleged that his plan or any policies of Empower Retirement required a closer investigation of the first withdrawal from an account. As far as Empower Retirement was concerned, it was plaintiff who requested the withdrawals, and it was plaintiff to whom those withdrawals were issued. Indeed, plaintiff admits that this was exactly what happened. Thus, because plaintiff's allegations do not permit an inference that Empower Retirement abused its discretion or acted arbitrarily or capriciously, he has failed to state an ERISA claim, including any claim for reimbursement after Empower Retirement learned that the withdrawals had been coerced due to plaintiff's mental state. *See Foster*, 693 F.3d at 1239 (plan administrator not required to reimburse for fraudulent withdrawal absent showing of abuse of discretion or arbitrary and capricious action).

Although plaintiff's allegations fail to state a claim under ERISA, the Seventh Circuit has cautioned district courts against dismissing a self-represented plaintiff's case

5

without giving him the chance to amend the complaint, unless it is obvious that amendment would be futile. *Felton v. City of Chicago*, 827 F.3d 632, 636 (7th Cir. 2016). Thus, the court will give plaintiff one opportunity to file an amended complaint that includes additional factual allegations about why he believes Empower Retirement abused its discretion or acted arbitrarily and capriciously in authorizing the two withdrawals from his retirement account. Plaintiff should not include allegations or arguments about his ADA claim, as any amendment would be futile.

## II. Claims against Coty Mayfield

As stated above, plaintiff also seeks to proceed on claims against Mayfield, stemming from Mayfield's manipulation and financial theft. All plaintiff's proposed claims against Mayfield are state law claims and, thus, could proceed in this case only if the court chooses to exercise supplemental jurisdiction over those claims under 28 U.S.C. § 1367.[3]

The general question under § 1367(a) is whether the state-law claims are "so related to [the federal claims] that they form part of the same case or controversy under Article III of the United States Constitution." The statute does not define the standard, but a common judicial description is that the claims must share "a common nucleus of operative facts." *See, e.g., Wisconsin v. Ho–Chunk Nation*, 512 F.3d 921, 936 (7th Cir. 2008); *Sanchez & Daniels v. Koresko*, 503 F.3d 610, 614 (7th Cir. 2007).

Even if the state and federal claims qualify under § 1367(a), "supplemental jurisdiction need not always be exercised." *Green Valley Investments v. Winnebago Cnty.*,

---

[3] The court does not have diversity jurisdiction over plaintiff's claims against Mayfield under 28 U.S.C. § 1332 because both plaintiff and Mayfield are domiciled in Wisconsin.

*Wis.*, 794 F.3d 864, 869 (7th Cir. 2015). Section 1367(c) lists four situations that justify a decision not to exercise supplemental jurisdiction, including if the state-law claim raises "novel or complex" issues, if the state-law claim "substantially predominates" over the federal claim, or if there are "compelling reasons" for declining jurisdiction. Generally, the determination whether to exercise supplemental jurisdiction should be guided by "the values of judicial economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).

On the surface, it appears that plaintiff's claims against Empower Retirement and Mayfield share common facts, as both stem from plaintiff's allegations that Mayfield manipulated him into requesting the withdrawals. However, plaintiff's claims against Mayfield are conceptually and practically distinct from his potential ERISA claim against Empower Retirement. The ERISA claim would be based on Empower Retirement's conduct and the information it knew or should have inferred at the time it approved the withdrawals. The claims against Mayfield are based on Mayfield's conduct toward plaintiff, and the threat of future harassment and intimidation. The claims are based on different facts and legal standards and thus, are not part of the same case or controversy.

But even if there was sufficient commonality to satisfy § 1367(a), multiple provisions in § 1367(c) suggest that the court should decline to exercise supplemental jurisdiction over plaintiff's claims against Mayfield. Section 1367(c)(2) asks whether the state-law claims will substantially predominate over the federal claims, "whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). Plaintiff's

7

allegations against Mayfield span several years and seek remedies distinctly different from his ERISA claim, meaning that his claims against Mayfield have the potential to overwhelm any potential ERISA case.

Section 1367(c)(4) asks whether there are "exceptional circumstances" and "other compelling reasons for declining jurisdiction." In applying this provision, courts consider whether the state-law claims "would ordinarily be expected to [be] tr[ied] . . . all in one judicial proceeding." *See Gibbs*, 383 U.S. at 725. The court would not ordinarily expect to try an ERISA claim and state-law harassment and theft claims in the same lawsuit. The duties and legal standards involved are fundamentally different. The court would decide the ERISA claim, whereas Mayfield would have the right to a jury trial on the state-law claims. In sum, it simply does not make sense to keep the state law claims and the ERISA claims in the same lawsuit. Therefore, the court will decline to exercise supplemental jurisdiction over plaintiff's claims against Mayfield, and those claims will be dismissed without prejudice to plaintiff's refiling them in state court.

## ORDER

IT IS ORDERED that:

1) Plaintiff Tyler Frick's second amended complaint (dkt. #36) is DISMISSED without prejudice for the reasons stated in this order.

2) Plaintiff may have until May 20, 2025, to file an amended complaint that provides more facts to support his ERISA claim against Empower Retirement, LLC.

3) All other pending motions and requests are DENIED for the reasons explained in this order.

Entered this 29th day of April, 2025.

>BY THE COURT:
>
>/s/
>
>_____
>WILLIAM M. CONLEY
>District Judge